AF Approval ___NA____                          Chief Approval ___CAB____

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                          CASE NO. 6:22-cr-148-PGB-LHP

ALAIN JEAN-LOUIS

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, ALAIN JEAN-LOUIS, and the attorney for the defendant, David Wilson, Esq., mutually agree as follows:

**A.    Particularized Terms**

    1.    Counts Pleading To

        The defendant shall enter a plea of guilty to Counts One and Five of the Indictment.  Count One charges the defendant with RICO Conspiracy, in violation of 18 U.S.C. § 1962(d).  Count Five charges the defendant with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1).

    2.    Minimum and Maximum Penalties

        Count One is punishable by a maximum term of imprisonment of 20 years; a fine of not more than $250,000; a term of supervised release of not more than 3 years, and a special assessment of $100 per felony count.

Defendant's Initials 

Count Five is punishable by a mandatory term of imprisonment of 2 years, which must run consecutively to the term of imprisonment imposed for Count One; a fine of not more than $250,000; a term of supervised release of not more than 1 year; and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.      Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

| | |
|---|---|
| First: | Two or more people agreed to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity; |
| Second: | The unlawful plan affected interstate commerce; |
| Third: | The defendant knowingly and willfully joined in the conspiracy; and |
| Fourth: | When the defendant joined in the agreement, the defendant had the specific intent to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity. |

Defendant's Initials ⟨initials⟩          2

The elements of Count Five are:

> First:   The defendant knowingly transferred, possessed, or used another person's means of identification;

> Second:   Without lawful authority;

> Third:   During and in relation to a felony conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; and

> Fourth:   The defendant knew that the means of identification belonged to an actual person.

4.   Count Dismissed

At the time of sentencing, the remaining count against the defendant, Count Three, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.   No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this agreement.

6.   Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the United States Treasury, identity theft victims, and Certified Public

Defendant's Initials _____   3

Accounting or tax preparation firms that were unlawfully breached during the course of the conspiracy charged in Count One.

7.   Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials _A.L._          4

Further, at the time of sentencing, if the defendant's offense level prior

to operation of subsection (a) is level 16 or greater, and if the defendant complies

with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement,

including but not limited to, the timely submission of the financial affidavit

referenced in Paragraph B.5., the United States agrees to file a motion pursuant to

USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant

understands that the determination as to whether the defendant has qualified for a

downward adjustment of a third level for acceptance of responsibility rests solely

with the United States Attorney for the Middle District of Florida, and the defendant

agrees that the defendant cannot and will not challenge that determination, whether

by appeal, collateral attack, or otherwise.

9.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and

voluntarily any and all assets and property, or portions thereof, subject to forfeiture,

pursuant to 18 U.S.C. § 1963, whether in the possession or control of the United

States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets

pursuant to any federal criminal, civil judicial or administrative forfeiture action.

The defendant also agrees to waive all constitutional, statutory and procedural

challenges (including direct appeal, habeas corpus, or any other means) to any

forfeiture carried out in accordance with this Plea Agreement on any grounds,
including that the forfeiture described herein constitutes an excessive fine, was not
properly noticed in the charging instrument, addressed by the Court at the time of
the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to
Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will
satisfy the notice requirement and will be final as to the defendant at the time it is
entered.  In the event the forfeiture is omitted from the judgment, the defendant
agrees that the forfeiture order may be incorporated into the written judgment at any
time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate
all property subject to forfeiture and to transfer custody of such property to the
United States before the defendant's sentencing.  To that end, the defendant agrees to
make a full and complete disclosure of all assets over which defendant exercises
control directly or indirectly, including all assets held by nominees, to execute any
documents requested by the United States to obtain from any other parties by lawful
means any records of assets owned by the defendant, and to consent to the release of
the defendant's tax returns for the previous five years.  The defendant further agrees
to be interviewed by the government, prior to and after sentencing, regarding such
assets and their connection to criminal conduct.  The defendant further agrees to be

Defendant's Initials _A.J.L._                 6

polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the

Defendant's Initials _AJL_          7

abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

    10.   Removal - Notification

         The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.

**B.**     **Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $200, payable to

Defendant's Initials _AJL_                 9

"Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.   Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.   Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.   Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate

Defendant's Initials 4JL          10

regarding the disposition of this case, subject to any limitations set forth herein, if any.

     5.     <u>Financial Disclosures</u>

               Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant

Defendant's Initials _A.J.L_          11

expressly authorizes the United States Attorney's Office to obtain current credit
reports in order to evaluate the defendant's ability to satisfy any financial obligation
imposed by the Court.

6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor
bound by this agreement.  The Court may accept or reject the agreement, or defer a
decision until it has had an opportunity to consider the presentence report prepared
by the United States Probation Office.  The defendant understands and
acknowledges that, although the parties are permitted to make recommendations and
present arguments to the Court, the sentence will be determined solely by the Court,
with the assistance of the United States Probation Office.  Defendant further
understands and acknowledges that any discussions between defendant or
defendant's attorney and the attorney or other agents for the government regarding
any recommendations by the government are not binding on the Court and that,
should any recommendations be rejected, defendant will not be permitted to
withdraw defendant's plea pursuant to this plea agreement.  The government
expressly reserves the right to support and defend any decision that the Court may
make with regard to the defendant's sentence, whether or not such decision is
consistent with the government's recommendations contained herein.

7.   Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _AJL_          13

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty,

Defendant's Initials _AJ_            14

defendant waives or gives up those rights and there will be no trial.  The defendant

further understands that if defendant pleads guilty, the Court may ask defendant

questions about the offense or offenses to which defendant pleaded, and if defendant

answers those questions under oath, on the record, and in the presence of counsel (if

any), defendant's answers may later be used against defendant in a prosecution for

perjury or false statement.  The defendant also understands that defendant will be

adjudicated guilty of the offenses to which defendant has pleaded and, if any of such

offenses are felonies, may thereby be deprived of certain rights, such as the right to

vote, to hold public office, to serve on a jury, or to have possession of firearms.

> 11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The
defendant certifies that defendant does hereby admit that the facts set forth in the
attached "Factual Basis," which is incorporated herein by reference, are true, and
were this case to go to trial, the United States would be able to prove those specific
facts and others beyond a reasonable doubt.

> 12.   Entire Agreement

This plea agreement, ~~including Exhibit A,~~ (MSD CB) constitutes the entire
agreement between the government and the defendant with respect to the
aforementioned guilty plea and no other promises, agreements, or representations

Defendant's Initials _AJL_          15

exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _22nd_ day of _August_, 2023.

ROGER B. HANDBERG
United States Attorney

ALAIN JEAN LOUIS
Defendant

Dana E. Hill
Assistant United States Attorney

David Wilson, Esq.
Attorney for Defendant

Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

Defendant's Initials _AJL_                16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                            CASE NO. 6:22-cr-148-PGB-LHP

ALAIN JEAN LOUIS

<u>PERSONALIZATION OF ELEMENTS</u>

As to Count One:

<u>First</u>:        Did two or more people agree to try to accomplish an unlawful
            plan to participate in the affairs of an enterprise through a pattern
            of racketeering activity?

<u>Second</u>:    Did the unlawful plan affect interstate commerce?

<u>Third</u>:      Did you knowingly and willfully join in the conspiracy?

<u>Fourth</u>:     When you joined in the agreement, did you have the specific
            intent to participate in the enterprise's affairs, knowing that other
            members of the conspiracy would commit at least two other acts
            of racketeering and intending to help them as part of a pattern of
            racketeering activity?

As to Count Five:

<u>First</u>:        Did you knowingly transfer, possess, or use another person's
            means of identification?

<u>Second</u>:    Did you do so without lawful authority?

<u>Third</u>:      Did you do so during and in relation to a felony conspiracy to
            commit wire fraud, in violation of 18 U.S.C. § 1349?

<u>Fourth</u>:     Did you know that the means of identification belonged to an
            actual person?

Defendant's Initials _____        17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 6:22-cr-148-PGB-LHP

ALAIN JEAN-LOUIS

## FACTUAL BASIS

On or about January 12, 2017, the server of an accounting firm in Orlando,

Florida, identified in the Indictment as Business-11, was breached, and the

personally identifiable information (PII) of Business-11's clients was thereafter stolen

from the server and then used to file false tax refunds with the IRS.  The FBI

initiated an investigation and identified a corrupt enterprise operating in the Middle

District of Florida and nationwide to obtain PII for the purpose of committing wire

fraud and mail fraud by submitting false tax refunds and retrieving the proceeds of

this offense.  The FBI determined that, from at least December 21, 2015, through at

least March 19, 2019, Defendant ALAIN JEAN-LOUIS, as well as coconspirators

MONIKA SHAUNTEL JENKINS, LOUISAINT JOLTEUS, VLADIMYR

CHERELUS, JEFF PROPHT-FRANCISQUE, LOUIS NOEL MICHEL, ANDI

JUNIOR JACQUES, DICKENSON ELAN, MICHAEL JEAN POIX, deceased

conspirator "Rich4ever4430," and others were part of that unlawful and corrupt

enterprise involving the submission of false and fraudulent tax refunds based on

Defendant's Initials _J
VL_                    18

stolen PII ("Enterprise").  The FBI's investigation revealed the following true facts about this Enterprise and JEAN-LOUIS's involvement in this Enterprise:

### *JEAN-LOUIS's Role*

In the course of this Enterprise, Defendant JEAN-LOUIS was a resident of Florida who accessed a dark web market that sold illegally obtained credentials of compromised computer servers ("Marketplace").  JEAN-LOUIS used the Marketplace to purchase credentials of compromised computer servers that were used to steal PII of taxpayers that JEAN-LOUIS and his conspirators later used to file false and fraudulent tax returns. JEAN-LOUIS also used the Marketplace to steal Electronic Filing Identification Numbers ("EFINs") – credentials used by tax preparers to file tax returns – so that he and his conspirators could file fraudulent and false tax returns using the stolen PII ("Stolen EFIN-Filed Returns"). JEAN-LOUIS's conspirators also created new businesses purporting to be legitimate tax preparation firms and obtained real EFINs on behalf of these sham businesses that were then used to file fraudulent and false tax returns using the stolen PII ("Sham EFIN-Filed Returns").  JEAN-LOUIS also used stolen PII to file false and fraudulent tax returns as though they were submitted by taxpayers independently, not through a CPA or accounting firm ("Self-Prepared Returns"). JEAN-LOUIS and his conspirators additionally created and modified financial accounts used to receive the tax refunds obtained from the IRS when the fraudulently submitted returns were accepted.

Defendant's Initials _LLL_                     19

JEAN-LOUIS's conspirators withdrew fraud proceeds from bank accounts created to receive the fraudulently obtained tax refunds as a result of the fraudulent and corrupt Enterprise.

JEAN-LOUIS worked directly with JENKINS in furtherance of this unlawful Enterprise. JEAN-LOUIS worked indirectly and through other conspirators in this same corrupt Enterprise. JEAN-LOUIS had at least one Marketplace account with the username "shitgattostop," and JEAN-LOUIS used at least one email in this Enterprise, "wickedhive@icloud.com." JEAN-LOUIS frequently emailed JENKINS at her email, "frankpresto13@yahoo.com."

Each false tax return filed in the course of this corrupt Enterprise was filed with the intent to defraud as part of a scheme to defraud by using false or fraudulent pretenses or representations about material facts and through the use of communications transmitted via wires in interstate commerce.

### *JEAN-LOUIS Used the Marketplace to Obtain Access to Compromised Computer Servers*

On March 29, 2016, a criminal conspirator of JEAN-LOUIS created an online account with the Marketplace with the username "shitgattostop." Over the course of its use, the account with the username "shitgattostop" purchased the credentials for 102 servers that had been unlawfully compromised and were for sale on the Marketplace. JEAN-LOUIS's criminal conspirator who created the shitgattostop Marketplace account used the email "shitgattostop@icloud.com" almost exclusively

Defendant's Initials _____          20

to commit federal financial crimes and this conspirator was federally charged and detained for access device fraud on July 19, 2016. After this conspirator was incarcerated, JEAN-LOUIS used the Marketplace account "shitgattostop" to purchase numerous credentials of compromised servers to obtain EFINs and PII for use in this unlawful Enterprise. Prior to the arrest of this JEAN-LOUIS conspirator, JEAN-LOUIS frequently emailed this conspirator, who was using the email "shitgattostop@icloud.com," to share PII, passwords, usernames, and other information used to commit financial fraud.

Starting in January 2017, JEAN-LOUIS starting using the shitgattostop username on the Marketplace to purchase the credentials of the compromised servers that were later used to file false tax returns.

| Date of purchase | Compromised Firm | Firm Later Used to File Returns With Stolen PII |
|---|---|---|
| January 2, 2017 | Victim Firm-10, a CPA firm from Texas | Victim Firm-10 |
| January 5, 2017 | Victim Firm-5, a tax preparation firm from Texas | Victim Firm-5 Victim Firm-10 |
| January 24, 2017 | Victim Firm-20, a CPA firm from Alabama | Victim Firm-6 |
| February 2, 2017 | Victim Firm-21, a CPA firm from Georgia | Victim Firm-6 Victim Firm-10 |
| February 15, 2017 | Victim Firm-22, a CPA firm from Massachusetts | Victim Firm-6 |
| February 21, 2017 | Victim Firm-7, a CPA firm from Texas | Victim Firm-6 |
| February 22, 2017 | Victim Firm-23, a CPA firm in Oregon | Victim Firm-6 |

Defendant's Initials _____        21

These purchases were made through a cryptocurrency platform and an account where the username was "wikedhiver@icloud.com," JEAN-LOUIS's email, where he would receive confirmations to confirm his purchases of these compromised servers at or around the time of these purchases.

### *JEAN-LOUIS Collaborated With Other Enterprise Members in Fraud and Identity Theft*

Information that JEAN-LOUIS obtained was used to advance the unlawful aims of the Enterprise in connection with other conspirators and other stolen PII and EFINs. In this Enterprise, the conspirators used stolen EFINs to submit false and fraudulent tax returns in the names of individuals without their knowledge, using stolen PII, and the conspirators directed those fraudulently obtained refunds to false bank accounts that the conspirators controlled. The conspirators would often use the PII stolen from one firm with an EFIN stolen from a second firm in submitting the fraudulent returns.

For example, on January 2, 2017, JEAN-LOUIS used the shitgattostop Marketplace account to purchase credentials for the compromised server of Victim Firm-10. JEAN-LOUIS emailed JENKINS the server credentials almost immediately after he purchased them. On January 5, 2017, JEAN-LOUIS used the shitgattostop Marketplace account to purchase credentials for the compromised server of Victim Firm-5, a tax preparation firm in Texas. On the same day, JEAN-LOUIS emailed JENKINS the stolen credentials for Victim Firm-5.

Defendant's Initials _JL_          22

From January 31 through March 29, 2017, members of the Enterprise used the stolen Victim Firm-10 EFIN to file 277 fraudulent returns, claiming approximately $1.4 million in refunds. Of the total of 277 false and fraudulent returns submitted through the stolen Victim Firm 10 EFIN, 107 of the fraudulent returns used PII stolen from Victim Firm-5. Of the total of 277 false and fraudulent returns submitted through the stolen Victim Firm-10, approximately 98% used PII stolen from servers purchased by JEAN LOUIS using the shitgattostop Marketplace account.

For another example, on January 5, 2017, JEAN-LOUIS purchased credentials on the Marketplace to the compromised server of Victim Firm-5, a tax preparation firm from Texas. On that day, JEAN-LOUIS shared those server credentials via email with JENKINS. From January 23, 2018 through March 16, 2018, members of the Enterprise used the EFIN for Victim Firm-5 to file 214 fraudulent tax returns, claiming approximately $1.58 million in refunds. On or about February 20, 2018, MICHEL used his Marketplace account to purchase server credentials for an accounting firm from North Carolina, Victim Firm-11. Of the 214 false and fraudulent tax returns filed through the stolen EFIN of Victim Firm-5, 123 were filed using stolen PII from Victim Firm-11.

One of the individuals whose PII was stolen by JEAN-LOUIS's purchase of access to Victim Firm-5's server, and whose PII was used to file a false tax return through the EFIN obtained through JEAN-LOUIS's purchase of access to Victim

Defendant's Initials _____          23

Firm-5's server, was G.D. G.D. was an actual person and JEAN-LOUIS and others in the Enterprise knew that G.D. was an actual person at the time they transferred, possessed, and used G.D.'s PII in submitting false and fraudulent tax returns. The fraudulent tax return was filed for G.D. on or about February 4, 2018. The return was directed to a bank account controlled by JENKINS.

### *JEAN-LOUIS's Stolen EFINs and PII Were Used For Numerous False Tax Returns*

On January 24, 2017, JEAN-LOUIS used the shitgattostop Marketplace account to purchase credentials for the compromised server of Victim Firm-20, a CPA firm from Alabama. From February 12 through March 3, 2017, members of the Enterprise used the EFIN stolen from Victim Firm-6 to file 37 false tax returns using the PII of clients of Victim Firm-20.

On February 2, 2017, JEAN-LOUIS used the shitgattostop Marketplace account to purchase credentials for the compromised server of Victim Firm-21, a CPA firm in Georgia. From February 19 through March 16, 2017, members of the Enterprise used the EFIN stolen from Victim Firm-6 to file 30 false tax returns using the PII of Victim Firm-21 clients. Members of the Enterprise used the PII stolen from Victim Firm 21 clients to file 56 fraudulent returns through an EFIN stolen from Victim Firm 10.

On February 15, 2017, JEAN-LOUIS used the shitgattostop Marketplace account to purchase credentials for the compromised server of Victim Firm-22, a

Defendant's Initials _JLJ_                    24

CPA firm in Massachusetts. Later the same day, JEAN-LOUIS emailed JENKINS a message entitled "Massachusetts" containing the Victim Firm-22 server credentials. From February 19 through March 3, 2017, members of the Enterprise used the EFIN stolen from Victim Firm-6 to file 22 returns using the PII of Victim Firm-22.

On February 21, 2017, JEAN-LOUIS used the shitgattostop Marketplace account to purchase credentials for the compromised server of Victim Firm-7, a CPA firm in Texas. Later that day, JEAN-LOUIS emailed JENKINS the Victim Firm-7 sever credentials. From February 24 through March 8, 2017, members of the Enterprise used Victim Firm-6's EFIN to file 81 returns using the PII of Victim Firm-7's clients. Members of the Enterprise used the EFIN for Victim Firm-7 to file 146 fraudulent returns from January 29 through March 19, 2019, claiming approximately $450,426 in refunds.

On February 22, 2017, JEAN-LOUIS used the shitgattostop Marketplace account to purchase credentials for the compromised server of Victim Firm-13, a CPA firm in Oregon. The same day, JEAN-LOUIS emailed JENKINS those credentials. From March 9 through July 24, 2017, members of the Enterprise used Victim Firm-6's stolen EFIN to file 23 returns using the PII of Victim Firm 13's clients.

Defendant's Initials _JL_                    25

### *JEAN-LOUIS and JENKINS Participated in Using the Stolen EFINs and PII*

On December 30, 2016, JEAN-LOUIS emailed JENKINS the server credentials for the compromised server of Victim Firm-9.  From January 23 through February 23, 2017, members of the Enterprise used EFINs stolen from Victim Firm-9 to file 158 fraudulent returns, claiming approximately $1 million in refunds.  On January 6, 2017, JENKINS emailed an unknown conspirator the EFIN and PTIN for a principal accountant employed at the parent company of Victim Firm-9. The EFIN and PTIN for that principal account were used for the fraudulent returns filed through Victim Firm-9 and the PII for those false returns was stolen from the parent company of Victim Firm-9.

On February 27, 2017, JEAN-LOUIS emailed PII of Person-6, a CPA, to JENKINS. The cloud photos for JEAN-LOUIS's account associated with "wickedhive@icloud.com," include a photo of a computer actively using remote access technology to intrude on a server associated with Person-6.

On March 31, 2017, JENKINS emailed JEAN-LOUIS a photograph of handwritten notes showing the PII (including the name, social security number, date of birth, EFIN, PTIN, PIN number) for one of the principal accountants at Victim Firm-6.  The filings made using the stolen Victim Firm-6 EFINs used information from this particular principal at Victim Firm-6.

Defendant's Initials _A.L._                    26

***JEAN-LOUIS Participated in Submitting "Self-Prepared" Fraudulent Returns***

On February 22, 2017, JEAN-LOUIS used the Marketplace to purchase compromised server credentials for a CPA firm in Oregon, Victim Firm-13. On that day, JEAN-LOUIS emailed JENKINS those credentials. From June 25 through June 28, 2017, MICHEL and other conspirators used PII obtained through Victim Firm-13 to file false tax refunds that were made to appear to be "self-prepared" by the taxpayer whose identifiers were stolen.

| Date | Accepted/ Rejected | Name on return | Email address on return |
|------|--------------------|----------------|-------------------------|
| 6/25/17 | Accepted | R.B. | Bigzoeman954@gmail.com (CHERELUS) |
| 6/25/17 | Rejected | B.B. | Douglasbrown2015@aol.com ("Rich4ever4430") |
| 6/25/17 | Rejected | P.B. | Doublerr103@gmail.com ("Rich4ever4430") |
| 6/26/17 | Accepted | P.B. | Doublerr103@gmail.com ("Rich4ever4430") |
| 6/26/17 | Rejected | B.B. | Douglasbrown2015@aol.com ("Rich4ever4430") |
| 6/26/17 | Accepted | B.B. | Douglasbrown2015@aol.com ("Rich4ever4430") |
| 6/27/17 | Accepted | J.B. | Bosshb1804@gmail.com (MICHEL) |
| 6/27/17 | Rejected | T.D. | Longlive2015@aol.com ("Rich4ever4430") |

The bank accounts to which the refunds were directed were linked to information obtained through hijacked servers including those of Victim Firm-5, Victim Firm-4, Victim Firm-8, and other firms whose servers were breached or whose server credentials were purchased by the conspirators involved in this Enterprise. The IP address used to file these returns ("IP-1") was a static IP address located at a physical address in Hollywood, Florida where JENKINS resided. IP-1

was also previously used by conspirators, including MICHEL. Between May 2014 and 2018, IP-1 was used to submit 900 false tax returns. These 900 false tax returns included false tax returns submitted with PII stolen from Victim Firm-13 by JEAN-LOUIS, as noted above.

### *Victims and Losses Attributable to Corrupt Enterprise*

In the course of this corrupt Enterprise, the participants filed 9,214 tax returns using fraudulently stolen PII and EFINs, claiming a total amount of refunds of more than $45 million. The IRS accepted many of these returns, paying an estimated total of more than $6 million in fraudulent refunds. The following reflects an estimation of the total amounts claimed on fraudulent tax returns using stolen EFINs, stolen PII, and EFINs associated with firms like FSL that were created by the members of the Enterprise to advance the fraudulent aims of the Enterprise.

| Entity Whose EFIN was Used | Fraudulent Tax Returns Submitted | Amounts Fraudulently Claimed |
|---|---|---|
| Morton Fast Refund (MFR) | 828 | $4,532,354 |
| SC Accounting and Tax Services (SCA) | 303 | $1,558,327 |
| Chantol Multiservices (CMS) | 441 | $2,223,395 |
| Yvelene Tax Services (YTS) | 455 | $2,476,789 |
| FSL Multiservices (FSL) | 664 | $3,099,291 |
| Edvert Tax Prep (EDV) | 1046 | $5,140,673 |
| AAJR Multiservices (AAJR) | 1853 | $6,767,992 |
| Deedee Multiservices (DMS) | 605 | $1,728,728 |
| RP Tax | 67 | $277,827 |
| Victim Firm-1 | 331 | $1,464,738 |
| Victim Firm-2 | 57 | $294,887 |
| Victim Firm-3 | 109 | $551,234 |

Defendant's Initials  AJL            28

| | | |
|---|---|---|
| Victim Firm-4 | 175 | $1,145,257 |
| Victim Firm-5 | 214 | $1,577,384 |
| Victim Firm-6 | 219 | $1,143,764 |
| Victim Firm-7 | 147 | $452,150 |
| Victim Firm-8 | 296 | $2,099,859 |
| Victim Firm-9 | 158 | $1,035,240 |
| Victim Firm-10 | 277 | $1,454,602 |
| Self-prepared | 969 | $6,409,684 |
| **TOTALS** | **9,214** | **$45,434,175** |

Based on the evidence and investigation, the Government and the Defendant agree that the readily provable estimation of losses attributable to the Defendant's participation includes the tax refunds fraudulently submitted through FSL, Victim Firm-1, Victim Firm-2, Victim Firm-5, Victim Firm-6, Victim Firm-7, Victim Firm-9, Victim Firm-10 as well as the self-prepared returns.

In all of this conduct, two or more people agreed to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity, this unlawful plan affected interstate commerce, JEAN-LOUIS knowingly and willfully joined in the conspiracy, and, when JEAN-LOUIS joined in the agreement, JEAN-LOUIS had the specific intent either to personally participate in committing at least two other acts of racketeering, or else to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity.

Defendant's Initials _AJL_          29

In addition, on or about February 4, 2018, JEAN-LOUIS knowingly transferred, possessed, or used, or aided and abetted the transfer, possession or use of, without lawful authority, the name and social security number of G.D., during and in relation to conspiracy to commit wire fraud, knowing that such means of identification belonged to an actual person.

Defendant's Initials _LJL_          30